IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JCV 671, LLC,                                          Case No. 3:07CV2781

          Plaintiff

      v.                                                   ORDER

MMA Management, LLC,

          Defendant

This is a breach of contract suit in which plaintiff JCV 671, LLC [JCV] claims that the

defendant MMA Management, LLC [MMA] failed, in violation of its obligations under a real estate

purchase contract, to go forward with the purchase of the property. Pending are counter-motions for

summary judgment. [Docs. 21, 25].

Because I conclude that the outcome of this case depends on a resolution of a disputed issue

of mixed fact and law – namely, whether MMA acted in good faith – I overrule both motions.

**Background**

MMA entered into a contract with JCV for MMA to buy property located at 671 Spencer

Street, Toledo, Ohio. MMA wanted to operate a business selling parts from used cars that it would

store on the premises. As required by the contract, MMA deposited $25,000 "earnest money." MMA

would recover that money if it notified JCV during an initial 120 day "inspection period" that it

would not proceed with the purchase.

Prior to the end of the initial 120 day inspection period, MMA, as allowed under the contract,

extended the inspection period for an additional sixty days. Its extension of the inspection period

made the earnest money non-refundable, "except by reason of [JCV's] default under this Agreement

or [MMA's] *inability* to obtain [Special Use] Permits within the additional sixty [60] day period."

[Doc. 1, Exh. 1, ¶ 6] (Emphasis supplied).

The contract required JCV, at its sole expense and before closing, to demolish all buildings and structures on the premises. The contract provided, however, for deposit by MMA of a "demolition deposit:"

> *In the event Purchaser elects to pursue the purchase* of the property, then on or before the close of the inspection period (as extended), Purchaser shall deposit with the title insurance company the additional sum of Two Hundred Thousand and no/one hundred dollars ($200,000.00) (the "Demolition Deposit") which deposit shall serve as additional earnest money under this Agreement, even if the demolition work has already been completed, it being agreed that upon depositing with the title insurance company, the initial earnest money together with the Demolition Deposit, shall be deemed "earnest money" for all purposes of this Agreement.

[*Id*., ¶ 28] (Emphasis supplied).

To be able to open and operate the facility, MMA had to get a Special Use Permit. City ordinances require Toledo City Council to complete final action on an application for a Special Use Permit within 120 days of the application's submission.

JCV understood that demolition would take from four to six months. It arranged for demolition to begin shortly after the parties signed the contract. MMA did not submit its application for a Special Use Permit until the 104th day of the 120 day initial inspection period.

Though initial informal response to MMA's request for a Special Use Permit was favorable, a neighborhood meeting about six weeks before the expiration of the sixty day extended inspection period made clear that there was considerable opposition. At that meeting, a City Councilman, who initially supported the proposal, announced he was opposed. Toledo's mayor expressed opposition. The staff of the Toledo-Lucas County Plan Commission, which was to make a recommendation to City Council, indicated doubt as to the likelihood of success.

2

Believing that it would not receive the Special Use Permit, MMA informed JCV that it would not proceed with the purchase shortly before expiration of the inspection period, as extended.

## Discussion

JCV brought this suit, claiming to be entitled to retain the $25,000 earnest money and seeking to recover the $200,000 demolition deposit, which MMA did not pay before terminating the transaction.

To justify its entitlement to a refund of the $25,000 earnest money, and defeat JCV's claims, MMA asserts its right to a refund in the event, as provided in ¶ 6 of the contract, *supra*, of its "inability to obtain [Special Use] Permits within the additional sixty [60] day period."

In addition, MMA denies that it has any liability for the unpaid demolition deposit, pointing to the conditional nature of its obligation in ¶ 28: "*In the event Purchaser elects to pursue the purchase* of the property, then on or before the close of the inspection period (as extended), Purchaser shall deposit with the title insurance company the additional sum of Two Hundred Thousand and no/one hundred dollars ($200,000.00)."

According to MMA, it never "elect[ed] to pursue the purchase," and thus is not liable for the demolition deposit.

JCV contends that the contract is silent as to the meaning of "elects to purchase." It argues that that phrase cannot, in light of the contract's other terms, act as an open-ended, unlimited escape hatch, enabling MMA to back out simply because at some point it decided not to proceed.

I agree, though my reasons and conclusion differ from those urged by JCV.

The contract permitted MMA to withdraw at any time and for any reason within the initial 120 day inspection period. It did not do so. That meant implicitly that thereafter it had decided to "pursue" the purchase of the property.

To "pursue" is not, however, the same as to "consummate." MMA still had the right to terminate the contract in the event of its "inability to obtain [Special Use] Permits within the additional sixty [60] day period."

Not having terminated the contract by the end of the initial 120 days, and thereby manifesting that it had "elect[ed] to pursue the purchase of the property," MMA became obligated to deposit the $200,000 demolition deposit "on or before the close of the inspection period (as extended)."

It did not do so. But, if it is correct in its principal contention that its "inability to obtain [Special Use] Permits within the additional sixty [60] day period" excuses its termination, then it is not liable for its non-payment of the demolition deposit. This is so, because under the contract, that deposit was deemed "additional Earnest money" [*Id.*, ¶ 28], and would have been returned, along with the $25,000 initial earnest money, if MMA was not culpable for the parties' failure to complete the transaction. [*Id.*, ¶ 16].

In response to MMA's contention that it was entitled to back away from the transaction because of its inability to obtain the Special Use Permits, JCV contends that MMA's failure, which JCV suggests was largely, if not entirely self-induced, to obtain the Special Use Permit constituted a breach of the implied covenant of good faith.

Under prevailing Ohio law:

a party can be found to have breached its contract if it fails to act in good faith.

4

What does it mean for a party to have breached its duty of good faith? The Colorado Supreme Court has held that the implied duty of good faith and fair dealing "is generally used to effectuate the intentions of the parties or to honor their reasonable expectations" and "applies when one party has discretionary authority to determine certain terms of the contract."

As stated by the Restatement Second of Contracts, "Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party." It also states that bad faith may consist of inaction, or may be the "abuse of a power to specify terms, [or] interference with or failure to cooperate in the other party's performance."

We conclude that public policy dictates that every contract contain an implied duty for the parties to act in good faith and to deal fairly with each other. Any agreement-whether a lease, a secured loan, or something else-has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract.

Therefore, we hold that the Littlejohns and the Parrishes were required to deal reasonably with each other. Whether they did so was an unresolved question of fact that made the grant of summary judgment inappropriate in this case.

*Littlejohn v. Parrish*, 163 Ohio App.3d 456, 463 (2005) (citations omitted).

While I disagree, as expressed above, with JCV's contention that the contract is silent with regard to what it would mean for MMA to "elect to pursue the purchase," I conclude that the contract is silent with regard to what MMA must do to secure the Special Use Permit.

In the absence of a specific timetable or other details in the contract, MMA had the implied duty to act in good faith in seeking to procure the Permit. *Id.*; *see also Savedoff v. Access Group, Inc.*, 524 F.3d 754, 764 (6th Cir. 2008); *Ed Schory & Sons, Inc. v. Soc. Natl. Bank,* 75 Ohio St.3d 433, 443-44 (1996)("'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties.") (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* 908 F.2d 1351, 1357-1358 (7th Cir. 1990).

MMA claims that its "inability" to obtain the Special Use Permit relieved it of its obligations under the contract and entitles it to summary judgment as to JCV's claim for the $200,000

demolition deposit and its claim for a refund of the $25,000 earnest money. Any such inability, JCV asserts, resulted solely from MMA's failure to try to get the Permit in good faith.

Whether MMA sought to get the Permit in good faith is the dispositive issue in this case.

If MMA acted in good faith but was nonetheless unable to obtain the Permit, then such inability justified termination of the transaction.

If, however, what MMA did or did not do manifested a lack of good faith, then it cannot look to any putative inability to secure the Permit as justifying its failure to pay the demolition deposit. And it would not be entitled to a refund of the earnest money.

Whether a party fulfilled the obligation of good faith is a mixed question of fact and law. This is a determination for a jury, not the court. *Savedoff, supra*, 524 F.3d at 769. The parties, pointing to various aspects of the record and evidence, disagree as to whether MMA fulfilled its implicit obligation to seek in good faith to get a Special Use Permit. Summary judgment is, accordingly, not appropriate.

<div align="center">

**Conclusion**

</div>

For the foregoing reasons, it is

ORDERED THAT: the counter motions for summary judgment [Docs. 21, 25] be, and the same hereby are overruled.

So ordered.

<div style="margin-left: 40%;">

s/James G. Carr
James G. Carr
Chief Judge

</div>

<div align="center">

6

</div>